```
        IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. CROIX

ALFREDO SEMPER                  :       CIVIL ACTION
                                :
        v.                      :
                                :
CHIEF JUDGE CURTIS V. GÓMEZ,    :
et al.                          :       NO. 12-79
```

MEMORANDUM

Bartle, J.                                              June 4, 2013

      Plaintiff Alfredo Semper is a former probation officer on St. Croix who was employed by the District Court of the Virgin Islands. He has sued the Chief Judge of the court, in his individual and official capacities, as well as the United States on the ground that the Chief Judge terminated him allegedly without cause and without affording him due process. According to his pleading, he contests the reason given for his dismissal, that is, that he negligently supervised a person who was murdered while on pretrial release. He seeks injunctive and declaratory relief.

      Before the court is the motion of the defendants to dismiss the first amended complaint under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. For present purposes, defendants are not challenging the truth of the well-pleaded facts.

      This lawsuit, we note, is plaintiff's second attempt to obtain relief. He had filed an action in the Court of Federal

Claims for back pay and reinstatement for having been dismissed as a probation officer without cause contrary to 18 U.S.C. § 3602(a) and his right to due process.  That court dismissed his claims for lack of subject matter jurisdiction, and the Court of Appeals for the Federal Circuit affirmed.  Semper v. United States, 694 F.3d 90 (Fed. Cir. 2012).  Citing United States v. Fausto, 484 U.S. 439 (1988), it reasoned that because plaintiff, as a judicial branch employee, was a member of the excepted service under the Civil Service Reform Act ("CSRA"), he had no right to judicial relief under the Act, and the Court of Federal Claims therefore lacked subject matter jurisdiction over his claims.  Having been rebuffed there, plaintiff now brings the pending action.

I.

The first amended complaint contains four counts.  In Count One, plaintiff asserts a constitutional claim, pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), against the Chief Judge in his individual capacity for terminating him without cause.  Plaintiff further avers that the Chief Judge failed to provide him with a pre-termination hearing in violation of due process.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).  He seeks equitable relief in the form of reinstatement as a probation officer as well as a declaration that he was terminated without cause.[1]  In Bivens, the Supreme

---

1.  Plaintiff also seeks back pay.  He concedes, however, that he
(continued...)

Court held that a plaintiff had a viable constitutional claim for damages under the Fourth Amendment against agents of the Federal Bureau of Narcotics who allegedly entered his apartment illegally without a warrant, conducted a search, and used unreasonable force in effecting his arrest.

The Supreme Court, citing <u>Bivens</u>, thereafter ruled in <u>Davis v. Passman</u>, 442 U.S. 228, 230 (1979), that "a cause of action and a damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated."  That case involved a gender discrimination claim against a Congressman who had terminated a member of his staff because she was a woman.  While she sought reinstatement to her position on the Congressman's staff, the Congressman had been defeated in a primary election and had left Congress before her action reached the Supreme Court.  In its opinion, the Court noted in a footnote that it was not passing on the propriety of equitable relief since it was a moot point.  It decided only that damages were an appropriate form of relief.  <u>Id.</u> at 245 n.24.

A year after <u>Passman</u>, the Supreme Court in <u>Carlson v. Green</u>, 446 U.S. 14 (1980), allowed a <u>Bivens</u> action by the estate of a deceased federal prisoner which sought money damages against prison officials for cruel and unusual punishment inflicted on decedent in violation of the Eighth Amendment.  The Court

---

1.  (...continued)
is not entitled to this relief under <u>Mitchum v. Hunt</u>, 73 F.3d 30 (3d Cir. 1995).

explained that a <u>Bivens</u> action can be precluded under two circumstances: (1) "when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress'"; and (2) "when defendants show that Congress has provided an alternative remedy which is explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." <u>Id.</u> at 18-19.  Since <u>Carlson</u>, the Supreme Court has been cautious about expanding the circumstances in which a <u>Bivens</u> action for constitutional violations may be brought against federal government officials.

In <u>Bush v. Lucas</u>, 462 U.S. 367 (1983), the Court refused to allow an employee of the National Aeronautics and Space Administration to proceed with a <u>Bivens</u> action against his supervisor for damages for violation of his First Amendment rights related to a retaliatory demotion.  The Court explained that his claim arose out of the employment relationship which was "governed by comprehensive procedural and substantial provisions giving meaningful remedies against the United States," that is, by the CSRA.  <u>Id.</u> at 368.  While the remedy provided by Congress was "less than a complete remedy for the wrong," the Court refused to establish a supplemental remedy that Congress had not provided.  <u>Id.</u> at 373.  It concluded that "Congress is in a better position to decide whether or not the public interest would be served by creating it."  <u>Id.</u> at 390.

In <u>United States v. Fausto</u>, 484 U.S. 439 (1988), the plaintiff, an employee of the Fish and Wildlife Service, was

suspended from his job for unauthorized use of his vehicle. He filed an action against the government under the Back Pay Act, 5 U.S.C. § 5596 in the Court of Claims. The Supreme Court held that no such claim was available in light of the recently enacted CSRA which "established a comprehensive system for reviewing personnel action taken against federal employees." Its "deliberate exclusion" of those in plaintiff's employment category from administrative or judicial review for the claim involved prevented relief under the Back Pay Act. Id. at 455.

Finally, in Schweiker v. Chilicky, 487 U.S. 412 (1988), the Supreme Court again grappled with the question whether a Bivens action was viable under the facts alleged. There, a social security recipient sued in their individual capacities various officials who administered the social security program. The plaintiff sought damages for improper denial of disability benefits in violation of due process. The Court concluded that Congress had created a comprehensive system for relief under the Social Security program even though it does not provide "complete relief" and specifically does not provide the relief plaintiff requested. Nonetheless, the Court ruled that the nature and extent of any remedies were best left to Congress and precluded the creation of a Bivens action. It observed, "Our more recent decisions have responded cautiously to suggestions that Bivens remedies be extended into new contexts." Id. at 421.

Congress under the CSRA provides an "elaborate remedial scheme created for federal employees." Bush, 462 U.S. at 385.

As a result, a court must hesitate in providing a <u>Bivens</u> claim under these circumstances since Congress has made a deliberate decision as to what remedies to provide and what remedies to withhold from the various categories of federal employees.[2]  The Second, Ninth, and Eleventh Circuits have all concluded that because of the comprehensiveness of the CSRA <u>Bivens</u> actions are not available to judicial branch employees.  <u>Dotson v. Griesa</u>, 398 F.3d 156, 160 (2d Cir.2005); <u>Blankenship v. McDonald</u>, 176 F.3d 1192, 1195 (9th Cir. 1999); <u>Lee v. Hughes</u>, 145 F.3d 1272, 1274 (11th Cir. 1998).  Each court has explained that in enacting the CSRA, Congress has made a conscious decision to withhold from judicial branch employees certain remedies which are available to other government employees.  Under the circumstances, these courts have refused to provide judicial branch employees with a claim under <u>Bivens</u>.  We note that in <u>Lee</u> and <u>Blankenship</u> the plaintiffs sought only money damages while in <u>Dotson</u> the plaintiff requested both money damages and equitable relief.

      The Supreme Court has not had occasion to pass upon a <u>Bivens</u> claim for judicial branch employees or on the right to equitable relief under <u>Bivens</u>.  In Count One of the amended complaint, plaintiff seeks injunctive relief in the form of reinstatement as well as declaratory relief against the Chief Judge in his individual capacity.  Even assuming that a <u>Bivens</u>

---

2.  The Supreme Court has also precluded a <u>Bivens</u> action for military personnel.  <u>United States v. Stanley</u>, 483 U.S. 669 (1987); <u>Chapell v. Wallace</u>, 462 U.S. 296 (1983).

action by a former judicial branch employee seeking equitable relief is viable under some circumstances, it is not viable here. The Chief Judge in his individual capacity has no authority to reinstate a probation officer as a government employee.  Clearly, any act of reinstatement would be an official government action.

If a person sued in his individual capacity dies, his executor takes his place as a party.  Kentucky v. Graham, 473 U.S. 159, 166 n.11 (1985); Fed. R. Civ. P. 25(a).  On the other hand, when a person is sued in his official capacity and leaves that office for whatever reason, his successor is substituted. Kentucky, 473 U.S. at 166 n.11; Fed. R. Civ. P. 25(d).  If a Chief Judge leaves office or comes to be represented by his estate, it goes without saying that this court could not require him in his individual capacity or his estate to reinstate a person as a probation officer.  The result is the same for a judge still in office sued in his individual capacity.  A decree simply cannot compel someone to do the impossible.  Kennedy v. Hazelton, 128 U.S. 667, 671 (1888); Bispham, George, The Principles of Equity, 611 (The Banks Law Publishing Co. 1922).

The same rationale concerning injunctive relief applies to plaintiff's claim for a declaration against the Chief Judge in his individual capacity that he was dismissed without cause. There is no basis for declaratory relief against a person when it would be meaningless.

The defendants' motion to dismiss Count One for failure to state a claim for relief will be granted.

-7-

II.

Count Two seeks equitable and declaratory relief against the Chief Judge in his official capacity. Again, plaintiff seeks reinstatement and a declaration that his termination was without cause. He claims the Chief Judge acted in violation of due process and of 18 U.S.C. § 3602(a) which reads in relevant part, "[a district court of the United States] may, for cause, remove a probation officer appointed to serve with compensation ...." The government argues that this claim is barred because the Chief Judge in his official capacity is protected by sovereign immunity.

Sovereign immunity, which is jurisdictional in nature, shields the United States from suit unless immunity has been waived. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). A suit against a federal government official or employee sued in his or her official capacity is in effect a suit against the United States. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); Dugan v. Rank, 372 U.S. 609, 611 (1963); Huberty v. U.S. Ambassador, 316 F. App'x 120, 122 (3d Cir. 2008).

The Administrative Procedure Act ("APA"), 5 U.S.C. § 702, waives the immunity of certain government agencies and federal officials where a party seeks relief other than money damages. Section 702 states in relevant part:

>   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a

-8-

> court of the United States seeking relief
> other than money damages and stating a claim
> that an agency or an officer or employee
> thereof acted or failed to act in an official
> capacity or under color of legal authority
> shall not be dismissed nor relief therein be
> denied on the ground that it is against the
> United States or that the United States is an
> indispensable party.  The United States may
> be named as a defendant in any such action,
> and a judgment or decree may be entered
> against the United States[.]

Section 701 of the APA, however, excludes "the courts of the United States" from the definition of an "agency."  Our Court of Appeals has not had occasion to consider whether the District Court of the Virgin Islands fits within that exclusion and thus retains under the APA its sovereign immunity against claims seeking relief "other than money damages."

The Court of Appeals has stated in another context that the District Court of the Virgin Islands is not a court of the United States.  On the other hand, it has characterized it as a federal court and has distinguished it from the Superior Court of the Virgin Islands, formerly the Territorial Court, which is established by the Virgin Islands Legislature.  Edwards v. HOVENSA, LLC, 497 F.3d 355, 360 (3d Cir. 2007); Moravian Sch. Advisory Bd. v. Rawlins, 70 F.3d 270, 274 (3d Cir. 1995).  Yet, on another occasion, the Court of Appeals noted that the District Court of the Virgin Islands may be a court of the United States "for some purposes, but not for others."  U.S. v. Lewis, 456 F.2d 404, 408 (3d Cir. 1972).  See Washington Legal Found. v. U.S. Sentencing Comm'n, 17 F.3d 1446, 1448-50 (D.C. Cir. 1994).

The District Court of the Virgin Islands was created by Congress, albeit under Article IV[3] and not Article III of the Constitution, since the Virgin Islands is a territory and not a state. This court exists pursuant to the Revised Organic Act of the Virgin Islands, the basic law passed by Congress under which the government of the Territory operates. 48 U.S.C. § 1611. While it has the jurisdiction of a District Court of the United States, its judges serve for a term of ten years and not for life. 48 U.S.C. §§ 1612(a) and 1614(a). In any event, we need not decide whether the District Court of the Virgin Islands is a court of the United States for purposes of the exclusion under § 701 of the APA. If it is not, it then clearly fits under another exclusion from the definition of an agency – specifically the exclusion of "the governments of the territories or possessions of the United States" of which it is a part. Consequently, the United States has not waived sovereign immunity for the District Court of the Virgin Islands or its Chief Judge sued in his official capacity for injunctive or declaratory relief.

The question remains as to whether the Chief Judge may be sued in his official capacity for injunctive or declaratory relief, notwithstanding the language of the APA. The plaintiff

---

3. Article IV of the Constitution states in relevant part: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States ...." U.S. Const. art. IV, § 9, cl. 2.

cites Mitchum v. Hurt, 73 F.3d 30 (3d Cir. 1996). In that case, several current or former employees of the Veterans Administration Medical Center ("VAMC") in Pittsburgh sought injunctive and declaratory relief against the VAMC administrator for violation of their First Amendment rights. While our Court of Appeals recognized that plaintiffs had meaningful administrative remedies under the CSRA or comparable statutes, it focused on the fact that the Supreme Court decisions denying civil servants additional remedies for constitutional violations under those circumstances concerned only claims for damages. See Bush v. Lucas, 462 U.S. 367 (1983). The Court of Appeals acknowledged that the argument against equitable remedies for the plaintiffs there had much to commend it. Nonetheless, citing Hubbard v. EPA, 809 F.2d 1 (D.C. Cir. 1986), it concluded that the "powers of the Federal courts to grant equitable relief for constitutional violations has long been established." It continued:

> It is reasonable to assume that Congress legislates with the understanding that this form of judicial relief is generally available to protect constitutional rights. While Congress may restrict the availability of injunctive relief ...., we believe that we should be very hesitant before concluding that Congress has impliedly imposed such a restriction on the authority to award injunctive relief to vindicate constitutional rights.

Id.

Mitchum, however, did not involve a judicial branch employee and did not cite any case which involved such an

-11-

employee or a request for injunctive relief against a judge or person in the judicial branch of government.  Nor did Mitchum discuss the APA, which allows for injunctive and declaratory relief against executive agencies such as the VAMC and its administrators, the defendants in that action.  In contrast, in the present case we are faced with specific legislation, that is, § 701 of the APA, which excludes the courts of the United States and the governments of the territories and possessions of the United States from the definition of an agency against which relief "other than money damages" may be sought.

As Mitchum acknowledged, "Congress may restrict the availability of injunctive relief ..."  Id. at 35.  Congress has done so by withholding the full panoply of rights to judicial branch employees under the CSRA.  Semper, 694 F.3d at 94.  See also, Bush, 462 U.S. at 388-89.  The comprehensive statutory scheme under the CSRA, coupled with the exclusion of "other than money relief" against the District Court of the Virgin Islands under § 701 of the APA, precludes in our view the equitable and declaratory relief plaintiff seeks here as a former judicial branch employee.

The analysis above applies equally to Count III of the complaint in which plaintiff seeks injunctive and declaratory relief against the United States.  Consequently, Counts II and III will be dismissed for lack of subject matter jurisdiction.

III.

Finally, in Count IV, plaintiff again pleads a claim that he was terminated in violation of 18 U.S.C. § 3602(a) which, as noted above, provides in relevant part, "The court [a district court of the United States] may, for cause, remove a probation officer appointed to serve with compensation ...."  In this count, plaintiff relies on the Mandamus Act, 28 U.S.C. § 1361, which reads:  "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[4]

Mandamus was traditionally the writ to require government officials to perform a non-discretionary duty.  Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-69 (1803).  It is not limited by sovereign immunity.  Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1234 (10th Cir. 2005).  Nonetheless, the federal courts, except for the District Court for the District of Columbia, did not possess mandamus power until the Mandamus Act was passed in 1962, other than in the limited situation in aid of

---

4. Under 28 U.S.C. § 451, "[t]he term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."  Under § 451, "[t]he term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government."  There is no indication that the context of § 1361 encompasses within the term "agency" the judicial branch of the United States or of its territories.

their jurisdiction. Id. at 1234. See McIntire v. Wood, 11 U.S. (7 Cranch) 504, 506 (1813); 28 U.S.C. § 1651.

Relief for plaintiff under the Mandamus Act fails for the reason Judge Henry Friendly explained in Liberation News Service v. Eastland, 426 F.2d 1379, 1384 (2d Cir. 1970). It applies only against the executive branch. It is not applicable to defendants affiliated with a court. King v. Russell, 963 F.2d 1301, 1303-04 (9th Cir. 1992); Duplantier v. United States, 606 F.2d 654, 663-64 (5th Cir. 1979). Although a higher court has power to grant a writ of mandamus against a lower court, the district court has no power to issue the writ against its judicial officers or the federal courts. Smith v. Kriegh, 643 F. Supp. 2d 1274 (D. Colo. 2009), aff'd 389 F. App'x 789 (10th Cir. 2010); 28 U.S.C. § 1651.

Accordingly, this court does not have subject matter jurisdiction over the claim of Count IV of the first amended complaint, and it will be dismissed.[5]

IV.

The lack of remedy for plaintiff, a former judicial branch employee under Bivens or under any statute must be understood in context. The judiciary has developed its own

---

5. The plaintiff throughout his first amended complaint contends that he was terminated as a probation officer without cause in violation of 18 U.S.C. § 3602(a). However, as noted above, the statute applies only to actions of "a district court of the United States." As a result of our dismissal of the complaint on other grounds, we need not reach the question whether the District Court of the Virgin Islands is such a court for this purpose.

-14-

mechanisms to deal with employment issues in the absence of these other remedies.  Since 1966 it has been the policy of the federal judiciary through the Judicial Conference of the United States "to follow the equal employment opportunity principles applicable to the private sector and government employers."  Dotson, 398 F.3d at 172.[6]  The Virgin Islands has in place a "Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan."  The Plan is based on the Model Equal Employment Opportunity Plan adopted by the Judicial Conference of the United States in March 1980 and also includes elements of the Model Employment Dispute Resolution Plan adopted in March 2010.  The Plan provides procedures for dealing with "workplace and employment issues" including not only those involving discrimination but also "personnel practices."  Probation officers, among other judicial employees, are protected. Violations by judges as well as other court employees are covered.  If there is an allegation against a judge, the duties under the Plan shall be performed by the Third Circuit Judicial Council.  The Plan provides the employee with due process rights and allows the right to counsel.  There is a prohibition against retaliation.  Although payment of attorneys' fees (except as authorized under the Back Pay Act), compensatory damages, and punitive damages are not available, an employee is entitled to

---

6.  The probation officer in Dotson had sued not only for race discrimination, but as the plaintiff here, for violation of due process.

-15-

back pay under certain circumstances and to various forms of equitable relief including "reinstatement to a position from which previously removed." The decision of the Judicial Council will be final.

The record does not reveal whether plaintiff has made any attempt to seek relief under this court's Plan.

V.

In conclusion, the plaintiff's first amended complaint will be dismissed.